Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| GREASE MONKEY FRANCHISING, LLC, a Colorado limited liability company, and GREASE MONKEY INTERNATIONAL, LLC.<br><br>*Plaintiff,*<br><br>v.<br><br>EUROSUD SERVICES LLC, a Florida limited liability company, ROSARIO W. LANNI, a Florida individual, and ALICIA C. HOYOS PALACIOS, a Florida individual.<br><br>*Defendants.* | CASE NO. |

## VERIFIED COMPLAINT

Grease Monkey Franchising, LLC ("GMF") and Grease Monkey International, LLC. ("GMI"), by and through their undersigned counsel, hereby submit this Complaint against Eurosud Services, LLC ("Franchisee"), Rosario W. Lanni ("Lanni"), and Alicia C. Hoyos Palacios ("Palacios" and together with Lanni, the "Owners") (Franchisee, Lanni, and Palacios may collectively be referred to herein as the "Defendants").

## PARTIES, JURISDICTION AND VENUE

1. GMF is a Colorado limited liability company with its principal place of business located at 5575 DTC Parkway, Suite 100, Greenwood Village, Colorado 80111.

2. GMI is also a Colorado limited liability company with its principal place of business located at 5575 DTC Parkway, Suite 100, Greenwood Village, Colorado 80111.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

3. Franchisee is a Florida limited liability company located at 1891 S. Military Trail, West Palm Beach, Florida 33415. All members of Franchisee are citizens and residents of Florida.

4. Lanni is a citizen and resident of Florida who can be served at 1891 S. Military Trail, West Palm Beach, Florida 33415.

5. Palacios is a citizen and resident of Florida whose address is 3100 N Palm Aire Drive, Apartment 203 Pompano Beach, Florida 33069-3850.

6. Personal jurisdiction and venue are proper with this Court as Franchisee executed a Franchise Agreement which stated in Section 21.3 that if a claim is asserted in any legal proceeding involving GMF and Franchisee, "the exclusive venue for disputes between them shall be … in the City and County of Denver, Colorado if in federal court … and each party shall waive any objection either may have to the personal jurisdiction of or venue in such state and federal courts of Colorado." Franchise Agreement, attached hereto as **Exhibit 1.**

7. Subject matter jurisdiction is proper because there are claims for relief for service and trademark infringement pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1338.

8. Subject matter jurisdiction is also proper in that the matters in controversy exceed $75,000 exclusive of interest and costs, and GMF and Defendants are citizens of different states.

## GENERAL ALLEGATIONS

9. GMF offers franchises to establish and operate businesses that provide quick service automotive oil and lubrication and other approved automotive maintenance and repair services ("Grease Monkey Centers").

10. GMI owns the Grease Monkey trademarks and the intellectual property for the Grease Monkey system and, in turn, licenses them to GMF.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

11. GMF then sublicenses its franchisees to use the service and trademarks, some of which are registered with the United States Patent and Trademark Office, including the service marks "GREASE MONKEY," "GREASE MONKEY OIL CHANGES & MORE," "GREASE MONKEY PREVENTATIVE MAINTENANCE PROS" (collectively, the "Marks"). *See* **Exhibits, 2, 3 and 4** attached hereto.

12. On September 24, 2022, GMF and Franchisee entered into a Franchise Agreement, (the "Franchise Agreement"), to operate a Grease Monkey Center in West Palm Beach, Florida.

13. On September 26, 2022, GMF, Franchisee, and Owners entered into a separate Owners' Agreement, (the "Owners' Agreement"), whereby Owners guaranteed the payment of all monies payable to GMF and the full performance and discharge of all obligations of Franchisee under the Franchise Agreement. *See* Exhibit 1, Attachment 3.

14. Franchisee opened and operated a Grease Monkey Center at 1891 S. Military Trail, West Palm Beach, Florida 33415 (the "West Palm Beach Center").

15. By letter dated July 31, 2026 (the "Default Letter"), GMF noticed Franchisee and the Owners at the address provided for in the Franchise Agreement that they were in default of the Franchise Agreement. *See* **Exhibit 5** attached hereto.

16. The defaults included: use of unapproved suppliers, failure to pay royalties and national materials fund contributions, and failure to provide proof of insurance.

17. Franchisee failed to cure any of the defaults.

18. By letter dated October 12, 2026, GMF noticed Franchisee and Owners that the defaults set forth in the Default Letter had not been cured and as such, that the Franchise

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

Agreement was terminated and that Franchisee and Owners owed GMF $191,503.53. *See* **Exhibit 6** attached hereto.

19. GMF, however, offered to waive all amounts owed if Franchisee and Owners executed a Termination Agreement with Mutual Releases (the "Termination Agreement").

20. Franchisee and Owners declined to enter into the Termination Agreement.

21. Franchisee and Owners continue to operate the West Palm Beach Center, using the Marks and using GMI's distinctive trade dress, despite the termination of the Franchise Agreement.

**FIRST CLAIM FOR RELIEF**
**(Service Mark Infringement under the Statutory Laws of the United States – GMF and GMI against all the Defendants)**

22. GMF incorporates all prior allegations.

23. This claim for relief is made pursuant to 15 U.S.C. § 1114 against all the Defendants.

24. GMI has federally-registered the Marks entitling it to the presumption that GMI has the exclusive right to use the Marks in commerce.

25. The Marks have been widely publicized through advertising in the United States. GMF and GMI have spent hundreds of thousands of dollars in this regard. As a result, the Marks are well and favorably known to the purchasing public as a distinctive indicator of the goods and services offered by GMF and its franchisees. The public associates the Marks with goods and services of a high and uniform quality. This enables GMF and those who lawfully license the Marks to compete more effectively in the marketplace.

26. Due to Franchisee's failure to cure their defaults, the Franchise Agreement was terminated on October 12, 2026.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

27. Upon termination, Franchisee ceased being a GMF franchisee and had no further rights under the Franchise Agreement to operate a Grease Monkey Center or use the Marks.

28. The Defendants were thus specifically required to "immediately cease, directly or indirectly representing to the public that [their] Grease Monkey is or was operated or in any way connected with the Grease Monkey system or holding [themselves] out as a present or former franchisee of GMF, and cease use of the Marks, processes, materials methods, or promotional materials provided by GMF and take all necessary steps to disassociate [themselves] from GMF, including without limitation, the removal of signs, destroying letterhead, advertising materials, invoices or other items containing the Marks." Franchise Agreement, Section 17.4(b).

29. Despite the Franchise Agreement's termination, the Defendants continue to operate the West Palm Beach Center and use the Marks in connection with the offering of goods and services.

30. In particular, the Defendants are using the Marks in connection with oil, lubrication, maintenance, and other automotive repair services, thereby inducing purchasers to believe, contrary to fact, that the goods offered by Defendants are still rendered, sponsored, or otherwise connected to GMF.

31. The Defendants' use of the Marks constitutes infringement within the meaning of 15 U.S.C. § 1114 as such use is likely to cause confusion, to cause mistake or to deceive.

32. Pursuant to termination of the Franchise Agreement, the Defendants were required to cease using the Marks. Thus, the Defendants are willfully and deliberately infringing the rights of GMF in the Marks.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

33. Franchisee has caused irreparable injury, loss of reputation, and pecuniary damages to GMI and GMF. Unless enjoined by this Court, Franchisee and the Owners will continue their infringement to the immediate and irreparable damage of GMF and GMI.

34. Pursuant to 15 U.S.C. § 1116, GMF is entitled to preliminary injunctive relief.

35. In addition to injunctive relief, pursuant to 15 U.S.C. § 1117, the unlawful use of and/or infringement upon the Marks has caused GMF and GMI to suffer substantial direct and consequential damages in an amount to be established at trial.

36. Under 15 U.S.C. §1117(a), GMF and GMI are also entitled to recover the profits of the Defendants including enhanced damages and the costs of this action.

37. Moreover, as this case is exceptional, particularly as Franchisee is a *former* franchisee and the Owners are guarantors, GMF and GMI are entitled to judgment for their reasonable attorney's fees and costs, as provided for under 15 U.S.C. § 1117(a).

WHEREFORE, GMF and GMI request the relief as set forth at the end of this Verified Complaint.

**SECOND CLAIM FOR RELIEF**
**(Breach of Franchise Agreement – GMF against Franchisee)**

38. GMF incorporates all preceding allegations.

39. GMF substantially performed its obligations under the Franchise Agreement.

40. Section 4.5 of the Franchise Agreement required Franchisee to purchase its equipment, inventory, products, and other items in accordance with GMF's standards and specifications and only from GMF, its affiliates or suppliers or other sources approved by GMF.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

41. Franchisee breached Section 4.5 of the Franchise Agreement by continuing to purchase oil and related products from Castrol and other suppliers that are not approved vendors under the Franchise Agreement.

42. Section 11.1 of the Franchise Agreement required Franchisee to pay a monthly royalty fee equal to six percent of gross revenue.

43. Franchisee breached Section 11.1 by failing, prior to Exhibit 6, to remit royalty payments for the following periods: November of 2024, December of 2024, January of 2025, May of 2025, June of 2025, July of 2025, August of 2025, and June of 2026.

44. Section 12.4 of the Franchise Agreement required Franchisee to contribute to the National Materials Fund in an amount up to one percent of the total amount of monthly gross revenue.

45. Franchisee breached Section 12.4 by failing, prior to Exhibit 6, to remit National Materials Fund contributions for the following periods: May of 2025, June of 2025, July of 2025, Augst of 2025, and June of 2026.

46. Section 17.4(a) of the Franchise Agreement required Franchisee to pay royalties, advertising contributions, and other amounts owed to GMF or its affiliates within 10 days of the effective date of termination or expiration.

47. Franchisee has breached Section 17.4(a) by failing to pay GMF amounts owed after termination.

48. Section 17.4(c) of the Franchise Agreement required Franchisee to immediately deliver to GMF the Brands Standards Manual and all other information, software, documents and

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

copies thereof which are proprietary to GMF or its affiliates, including without limitation, all client lists and related client information contained in computer databases or otherwise.

49. Franchisee breached Section 17.4(c) by failing to return any proprietary information to GMF including all client lists and related client information.

50. Section 17.4(d) of the Franchise Agreement required Franchisee to relinquish all interest of any kind in the franchise including allowing GMF to exercise its right to purchase pursuant to Section 17.5 of the Franchise Agreement.

51. Franchisee breached Sections 17.4(d) and 17.5 by refusing to allow GMF to purchase the Grease Monkey Center.

52. Section 17.4(f) of the Franchise Agreement required Franchisee to immediately notify the telephone company, all telephone directory publishers, Internet service providers, and social media website operators of the termination or expiration of your right to use any telephone number, any regular, classified or other telephone directory listings, domain names, or social media websites or accounts associated with the Marks and to authorize transfer thereof to GMF or its designee.

53. Franchisee breached Section 17.4(f) by failing to make these notifications.

54. Section 17.4(g) of the Franchise Agreement required Franchisee to immediately take such action as may be required to remove from the Internet all sites referring to your former Grease Monkey Center or any of the Marks and to cancel or assign to GMF, in GMF's sole discretion, all rights to any domain names for any sites on the Internet that refer to Franchisee's former Grease Monkey Center or any of the Marks.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

55. Franchisee breached Section 17.4(g) by failing to take action to remove from the Internet sites referring to the West Palm Beach Center.

56. Section 18.2 of the Franchise Agreement contains a post-termination covenant not to compete clause (the "Post-Termination Covenant Not to Compete") which provides as follows:

> Franchisee acknowledges that, pursuant to the franchise relationship established in this Agreement, Franchisee has acquired from GMF confidential information regarding Grease Monkey's Marks and Licensed Methods and that, in the event this Agreement is terminated, Franchisee could injure GMF or its affiliates, not only because it is no longer a Franchisee but, in addition, because Franchisee would be able to take those customers it has acquired over a period of time in the event Franchisee were to start another automotive lubrication, maintenance and repair business. Therefore, in the event the franchise rights granted pursuant to this Agreement are ever terminated, expire or Franchisee otherwise relinquishes all rights to the franchise through assignment or otherwise, for whatever reason, neither Franchisee nor its officers, directors and owners of five percent or more of the equity securities of a corporate franchisee, for a period of three years, commencing on the effective date of termination or expiration of this Agreement, or the date on which Franchisee ceases to conduct business, whichever is later, unless authorized under another franchise agreement with GMF or its affiliates, shall (a) have any direct or indirect interest (through a member of any immediate family of Franchisee, its officers, directors and Owners of five percent or more of the stock of a corporate franchisee or otherwise) as a disclosed or beneficial owner, investor, partner, director, officer, member, manager, employee, consultant, representative or agent in, or (b) in any other capacity (i) engage in, (ii) own any assets used in, or (iii) receive any portion of the sales proceeds or net income or any other benefit from, a Competitive Business within a radius of 25 miles of the location of Franchisee's former Grease Monkey Center, or within a radius of 5 miles of any other Grease Monkey Center operating as of the date of termination or expiration of this Agreement or assignment by Franchisee. This covenant not to compete is intended to be a reasonable restriction on Franchisee. For purposes of interpreting this covenant not to compete, every month of time and mile of distance shall be considered severable. In the event a court of competent jurisdiction interprets either the spatial or temporal limitations of this Agreement to be overly broad, then the court shall adjust the offending limitation, either by months of time or miles of distance, so as to fashion a reasonably enforceable covenant.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

57. Franchisee has breached the Post-Termination Covenant Not to Compete by continuing operation of the West Palm Beach Center, after the Franchisee Agreement was terminated.

58. Section 19.2 of the Franchise Agreement required Franchisee to provide GMF with proof of insurance, including endorsements naming GMF as additional insured under the commercial general liability and garage keepers liability policies. The proof of insurance must also evidence the types and minimum amounts of coverage required under Section 19.1 of the Franchise Agreement.

59. Franchisee breached Section 19.2 by failing to provide the required proof of insurance.

60. Section 23.7 allows GMF to recover its attorney's fees and costs if it is the prevailing party in litigation.

61. GMF has incurred and will incur costs and attorney's fees.

WHEREFORE, GMF requests the relief as set forth at the end of this Verified Complaint.

## THIRD CLAIM FOR RELIEF
**(Breach of Guarantee – GMF against Owners)**

62. GMF incorporates all prior allegations.

63. By virtue of Section 4.1 of the Owners' Agreement, Owners guaranteed all monetary obligations of Franchisee to GMF.

64. As set forth in the second claim for relief regarding the monetary breaches of the Franchisee, the Owners have breached their guarantee by failing to pay the royalty and advertising fee contribution not paid by the Franchisee.

65. By virtue of Section 4.2 of the Owners' Agreement, Owners guaranteed full performance and discharge by Franchise of all Franchisee's obligations under the Franchise Agreement.

66. As set forth in the second claim for relief regarding the performance breaches of the Franchisee, the Owners have breached their guarantee by failing to assure that the Franchisee: a) ceased competing, b) bought only product from authorized vendors, c) provided evidence of insurance, d) returned the brand standards manual; e) ceased use of proprietary information; e) assigned the telephone numbers of the Grease Monkey Center; f) removed any internet listings; g) honored GMF's option to purchase.

67. Additionally, Section 3.1 of the Owners Agreement executed by Owners contains a non-competition and non-solicitation clause ("Non-Competition and Non-Solicitation Agreement") which provides as follows:

> <u>Non-Competition and Non-Solicitation During and After the Term of the Franchise Agreement.</u>
>
> Owners acknowledge that as a participant in our system, they will receive proprietary and confidential information and materials, trade secrets, and the unique methods, procedures and techniques which we have developed. The provisions of the Franchise Agreement governing Franchisee's restrictions on competition and solicitation both during the term of the Franchise Agreement and following the expiration or termination of the Franchise Agreement are hereby incorporated into this Owners' Agreement by reference, and Owners agree to comply with and perform each such covenants as though fully set forth in this Owners' Agreement as a direct and primary obligation of Owners. Further, we may seek the same remedies against Owners under this Owners' Agreement as we may seek against Franchisee under the Franchise Agreement.

68. Owners have continued to violate the Non-Competition and Non-Solicitation Agreement.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

WHEREFORE GMF and GMI request the following:

a. Pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116, a preliminary and permanent injunction enjoining the Defendants and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from infringing the Marks;

b. Consistent with 15 U.S.C. § 1117, that Defendants be held liable for Franchisee's profits, trebled, costs and attorney's fees for service and trademark infringement;

c. Damages in an amount to be proved at trial against Franchisee for breach of the Franchise Agreement, including lost future royalties and national funds fees.

d. Damages against Owners for breach of the guarantee and breach of the Non-Competition and Non-Solicitation Agreement in an amount to be proved at trial including lost future royalties.

e. A declaration pursuant to Fed. R. Civ. P. 57 that the Franchise Agreement was terminated in conformance with the Franchise Agreement and all franchise rights of Franchisee are no longer;

f. Pursuant to Fed. R. Civ. P. 65, a preliminary and permanent injunction enjoining Franchisee, Owners and their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise

from being associated, directly or indirectly as an employee, proprietor, partner, stockholder, officer, agent, member, manager or otherwise of a similar business to a GMF franchisee for a period of three (3) years from commencing on the effective date of termination or expiration of this Agreement, or the date on which Franchisee ceases to conduct business, whichever is later, from (a) having any direct or indirect interest (through a member of any immediate family of Franchisee, its officers, directors and Owners of five percent or more of the stock of a corporate franchisee or otherwise) as a disclosed or beneficial owner, investor, partner, director, officer, member, manager, employee, consultant, representative or agent in, or (b) in any other capacity (i) engage in, (ii) own any assets used in, or (iii) receive any portion of the sales proceeds or net income or any other benefit from, a Competitive Business within a radius of 25 miles of the location of Franchisee's former Grease Monkey Center, or within a radius of 5 miles of any other Grease Monkey Center operating as of the date of termination or expiration of this Agreement or assignment by Franchisee.

g. Pursuant to Fed. R. Civ. P. 65, a preliminary and permanent injunction requiring Franchisee, Owners and their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise to provide GMF with the brand standards manual, the telephone numbers of the Grease Monkey Center, cease use of all proprietary information and remove any internet listings.

Docusign Envelope ID: 2DFF1909-D60B-8C73-8212-3D7E986F8424

h. Costs and attorney fees be assessed against Franchise and Owners and in favor of GMF pursuant to applicable contractual provision, statute, or rule; and

i. Such other and further relief as the Court deems just and proper in the premises.

**VERIFICATION**

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed by:
Donald E. Helphrey
B7ABFA5FC670431...

Don Helphrey
Vice President Franchise
Grease Monkey Franchising, LLC

Respectfully submitted this 11th day of November, 2026.

ROBINSON, WATERS & O'DORISIO, P.C.

*/s/ Harold R. Bruno III*

Harold R. Bruno III, Esq.
Gianna Lonardo, Esq.
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
hbruno@rwolaw.com
glonardo@rwolaw.com
*Counsel for Plaintiff*